IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANNY MARTA,

     Plaintiff,

v.                                        Civ. No. 23-192 GBW/KRS

CITY OF LAS CRUCES and
MISAEL IBARRA *in his
individual capacities*,

     Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY AND SUMMARY JUDGMENT AS TO PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AND DENYING PLAINTIFF'S MOTION TO DEFER CONSIDERATION

THIS MATTER comes before the Court on Defendants City of Las Cruces and Misael Ibarra's Motion for Qualified Immunity and Summary Judgment (*doc. 46*), Plaintiff's Motion to Defer Consideration of Motion for Summary Judgment and Permit Deposition Pursuant to Rule 56(D) and Declaration of Unavailability of Facts to Support Opposition (*doc. 71*), and the parties' accompanying briefing on these matters (*docs. 56, 68, 78*).  Having reviewed the briefing and being fully advised, the Court will GRANT Defendants' Motion for Qualified Immunity and Summary Judgment as to Plaintiff's 42 U.S.C. § 1983 claims and DENY Plaintiff's Motion to Defer.

### I.    Procedural Background

Plaintiff Danny Marta brings a variety of state and federal claims against the City of Las Cruces and Officer Misael Ibarra ("Defendant Ibarra").  *Doc. 7*.  These claims are

based on the events surrounding Defendant Ibarra's arrest of Plaintiff for Concealing Identity and Resisting, Evading, or Obstructing an Officer on February 6, 2021. *See generally id*.

Plaintiff filed his initial Civil Complaint for Damages in state court on January 25, 2023. *Doc. 1-1*. On March 7, 2023, Defendants removed the case to federal court, *doc. 1*, and Plaintiff filed the operative First Amended Civil Complaint for Damages. *Doc. 7*.[1] Of Plaintiff's eight causes of action, the first five are brought pursuant to the New Mexico Torts Claim Act ("NMTCA"). *Id*. ¶¶ 43-69. He alleges "False Arrest," "Assault," "Battery," and "Malicious Abuse of Process," against Defendant Ibarra and "Negligent Supervision or Training" against Defendant City of Las Cruces. *Id*. The sixth, seventh, and eighth causes of action are brought against Defendant Ibarra in his individual capacity pursuant to 42 U.S.C. § 1983. *Id*. ¶¶ 70-87. He alleges "Unreasonable Seizure," "Excessive Force," and "Malicious Prosecution," respectively. *Id*.

Defendants filed the instant Motion for Qualified Immunity and Summary Judgment on November 30, 2023, seeking dismissal of all of Plaintiff's claims against

---

[1] On March 22, 2023, Defendants filed a Motion to Dismiss Plaintiff's First Amended Civil Complaint for Damages (*doc. 7*) seeking dismissal of: (1) any § 1983 claims against Defendant Ibarra in his official capacity, and (2) any § 1983 claims against Defendant City of Las Cruces. *Doc. 10* at 4. At a trial scheduling conference held on July 6, 2023, Plaintiff's counsel clarified that Plaintiff did not oppose the relief sought in the Motion to Dismiss to the extent that the Motion does not impact Plaintiff's state claim for Negligent Supervision and Training against Defendant City of Las Cruces. *Doc. 29* at 2. Accordingly, the Court dismissed, without prejudice, any § 1983 claim against Defendant Ibarra in his official capacity and any § 1983 claim against Defendant City of Las Cruces. *See generally doc. 31*.

Defendant Ibarra. *Doc. 46*. Specifically, Defendants seek dismissal of Plaintiff's § 1983 claims based upon the defense of qualified immunity. *Id*. at 8-23. Additionally, Defendants move for summary judgment on Plaintiff's NMTCA claims. *Id*. at 24-27. Plaintiff filed a response on December 20, 2023. *Doc. 56*. Briefing on Defendants' Motion for Qualified Immunity and Summary Judgment was complete on January 31, 2024, with the filing of Defendants' Reply. *Doc. 68*.

On February 1, 2024 – three months after Defendants moved for qualified immunity and summary judgment and over a month after he responded – Plaintiff filed a Motion to Defer Consideration of Motion for Summary Judgment and Permit Deposition Pursuant to Rule 56(D) and Declaration of Unavailability of Facts to Support Opposition (the "Motion to Defer"), arguing that a deposition of Defendant Ibarra "has become necessary to address factual issues which Defendants claim Plaintiff has failed to provide evidence to support his claim." *See generally doc. 71*. Defendants filed a response on February 29, 2024. *Doc. 78*. Plaintiff's reply would have been due on March 14, 2024, but none was filed. Therefore, briefing on the Motion to Defer is complete. D.N.M.LR-Civ. 7.1(b) ("The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete.").

II.   LEGAL STANDARDS

### A. Summary Judgment Based on the Defense of Qualified Immunity

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S. at 324.

Notably, however, summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Unlike a typical summary judgment motion, when a defendant asserts qualified immunity, the burden shifts first to the plaintiff to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)). If both parts of this "strict two-part test" are met, the burden

4

shifts back to the defendant who must "show[] that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000)).  If either part of the two-part test is not met, the defendant will prevail at summary judgment.  The Court may address the two prongs of the test in any order.  *Pearson*, 555 U.S. at 236.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).  While it is not necessary to identify a case with identical facts, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  The Supreme Court has repeatedly admonished courts "not to define clearly established law at a high level of generality."  *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).  General principals "do not by themselves create clearly established law outside 'an obvious case.'"  *White v. Pauley*, 580 U.S. 73, 80 (2017) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).  The test is whether the "right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Kisela*, 584 U.S. at

105 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)).

In determining whether the plaintiff has met his or her burden to overcome a qualified immunity defense, the Court construes the facts in the light most favorable to the plaintiff as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). In so doing, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–54 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the ... motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257. Nonetheless, at the summary judgment stage, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

### III.   UNDISPUTED MATERIAL FACTS ("UMFS")

Based on the record before it, the Court finds the following material facts to be undisputed for the purposes of Defendants' Motion for Qualified Immunity and Summary Judgment.[2]

1.  On February 6, 2021, Defendant Ibarra arrived at 1330 East Organ Avenue, Las Cruces, New Mexico, (the "Property") to investigate a noise complaint. Defendants' Undisputed Material Fact ("DUMF") 1; Plaintiff's Undisputed Material Fact ("PUMF") 1.

2.  When Defendant Ibarra arrived at the Property, he heard music emanating from the backyard.  DUMF 2[3]; *see generally* Exhibit 5 (February 6, 2021-Defendant Body Cam) to Plaintiff's Response to Defendants' Motion for Summary Judgment Based on Qualified Immunity, Ex. 5-Ibarra_1330_E_Organ ("Video") at 0:00-0:12.

3.  Defendant Ibarra entered the fenced-in backyard of the Property to investigate the noise complaint.  PUMF 3; *see* Video at 0:00-4:16.

4.  Plaintiff was the only person to address Defendant Ibarra when he arrived at the Property.  Plaintiff insisted that Defendant Ibarra could not be in the backyard, sparking an argument between the two about Defendant Ibarra's presence in the backyard.  DUMF 4, 6.  Video at 0:00-0:45.

---

[2] Where the Court cites to a party's statement of fact, it does so pursuant to Federal Rule of Civil Procedure 56(c)(1) because the evidence cited by the party for that fact supports the Court's finding and, if the other party has disputed this fact, the evidence cited by that party does not genuinely dispute that finding.  Where the Court cites to evidence in the record, it does so pursuant to Rule 56(c)(3), which permits consideration of "other materials in the record."  Fed. R. Civ. P. 56(c)(3).

[3] Defendant Ibarra and Plaintiff dispute whether Defendant Ibarra could hear "loud music playing from the backyard as he exited his police unit from at least 50 feet away." DUMF 2; Plaintiff's Response to Defendants' Statement of Material Facts 2. Video evidence of the scene demonstrates that music was emanating from the backyard of the Property following Officer Ibarra's entrance to investigate. Video 0:00-0:12.

5.  Defendant Ibarra asked for Plaintiff's identification twice while standing inside of the backyard of the Property, and Plaintiff refused.  Video at 0:03-0:35.

6.  Defendant Ibarra and Plaintiff exited the fenced-in backyard of the Property and continued their conversation in the side-yard of the Property.  Video at 0:38-0:55.

7.  Defendant Ibarra asked for Plaintiff's identification while both men stood in the side-yard of the Property, and Plaintiff refused.  Video at 0:48-0:49.

8.  Plaintiff walked back to the backyard and stood slightly inside of it while simultaneously standing at the open fence door.  The fence door was in Plaintiff's left hand.  Defendant Ibarra followed Plaintiff and the two continued their conversation.  At this time, Defendant Ibarra was standing at the threshold between the side-yard and the gated backyard.  Here, Defendant Ibarra asked for Plaintiff's identification two more times, and he refused.  Defendant Ibarra told Plaintiff that he was going to be charged with Concealing Identity if he did not furnish his identification.  Plaintiff replied "That's fine. Charge me."  Defendant Ibarra told Plaintiff to turn around, and Plaintiff replied, "Nope."  Video at 0:54-1:29.

9.  Defendant Ibarra continued to tell Plaintiff to turn around and grabbed his right hand, but Plaintiff pulled his arm away from Defendant Ibarra's grip.  At this time, Defendant moved through the open gate and into the backyard.  Video at 1:30-1:35.

10. Defendant Ibarra pushed Plaintiff away from him which created distance between the two of them.  Plaintiff put his hands in front of him and then to his sides.  Video at 1:38-1:41.

11. Defendant Ibarra again grabbed Plaintiff's right hand and attempted to put it behind his back, but Plaintiff physically refused.  While ahold of Plaintiff's right arm, Defendant Ibarra pushed him into a bush to try and get him on the ground,

but both men fell.  Others situated on the Property gathered around the struggle between the two men and started yelling.  Video at 1:42-1:47; DUMF 13.

12. Once both men regained balance, Defendant Ibarra administered a taser shot, but it was ineffective because only one of the taser barbs penetrated Plaintiff's skin. Plaintiff continued to walk toward Defendant Ibarra following the first ineffective taser shot.  Defendant Ibarra administered a second taser shot and Plaintiff fell to the ground.   Once Plaintiff was on the ground, Defendant Ibarra administered two taser arc cycles.  The group of people who had gathered around the struggle between the two men continued to yell.  Video at 1:49-1:56; PUMFs 29, 30, 32; *Doc. 56-4* at 19 (Defendant Ibarra's Taser Log).

13.  Additional officers arrived on the scene as Defendant Ibarra handcuffed Plaintiff.  DUMF 19.

14. Defendant Ibarra charged Plaintiff with Concealing Identity and Resisting, Obstructing, or Evading an Officer, but the charges were ultimately dismissed. DUMF 20.

## IV.    PLAINTIFF'S MOTION TO DEFER

As a preliminary matter, the Court addresses Plaintiff's Motion to Defer.  On January 4, 2024, parties submitted a *Joint* Motion to Stay All Discovery Proceedings pending resolution of Defendants' Motion for Qualified Immunity and Summary Judgment because Defendant Ibarra invoked the defense of qualified immunity.[4]  *Doc. 63*.  The stay was granted on January 5, 2024.  *Doc. 64*.  More than a month after

---

[4] When a public official is entitled to qualified immunity, the entitlement relieves the official from bearing any of the burdens of litigation, including discovery.  *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

responding to Defendants' Motion for Qualified Immunity and Summary Judgment,

Plaintiff moved to reopen discovery because a Deposition of Defendant Ibarra "has

become necessary to address factual issues which Defendants claim Plaintiff has failed

to provide evidence to support his claim." *Doc. 71* ¶ 6.

      In response to a summary judgment motion, a non-moving party may request

additional discovery by showing via affidavit or declaration that without discovery "it

cannot present facts essential to justify its opposition" to the motion.  Fed. R. Civ. P.

56(d).  "The Court may: (1) defer considering the motion or deny it; (2) allow time to

obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

order."  *Id*.  In the Tenth Circuit, a non-movant requesting additional discovery under

Rule 56(d) "must specify (1) the probable facts that are not available, (2) why those facts

cannot be presented currently, (3) what steps have been taken to obtain these facts, and

(4) how additional time will enable the party to obtain those facts and rebut the motion

for summary judgment."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)

(quotations omitted).  When a summary judgment motion is based on qualified

immunity, the non-movant's Rule 56(d) affidavit must also "demonstrate a connection

between the information he would seek in discovery and the validity of the defendant's

qualified immunity assertion."  *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir.

1990) (quotations omitted).  Thus, "it is insufficient for the party opposing the motion to

merely assert that additional discovery is required to demonstrate a factual dispute or

that evidence supporting a party's allegation is in the opposing party's hands." *Id.* (quotations omitted).

Plaintiff's Motion to Defer is procedurally deficient, untimely, and based solely on Plaintiff's desire to clarify a factual dispute. First, Rule 56(d) specifically requires that an affidavit be filed as part of the request for additional discovery. *See Comm. For First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) ("A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant.") (citations omitted); *see also Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) ("We expect Rule 56(d) motions to be robust, and we have observed that an affidavit's lack of specificity counsels against a finding that the district court abused its discretion in denying a request for additional discovery under the rule. Even when an appellant's summary judgment response arguably contains the information required in Rule 56(d), we may not look beyond the affidavit in considering a Rule 56(d) request.") (internal citations and quotations omitted). No such affidavit has been filed. Second, Plaintiff filed his Motion to Defer after briefing was complete on the Motion for Qualified Immunity and Summary Judgment. *See* Fed. R. Civ. P. 56(d) (the court "may" allow discovery when a party shows "that, for specified reasons, it cannot present facts essential to justify its opposition"). Plaintiff cannot logically make the required showing that he needs a deposition of Defendant Ibarra to respond to Defendants' Motion for Qualified Immunity and Summary Judgment because he has already provided a factually

detailed response.  Third, Plaintiff's request stems from wanting to clarify, or

demonstrate, a factual dispute without adequately showing a connection between that

factual dispute and the validity of defendant's qualified immunity assertion.  *Lewis*, 903

F.2d at 758; *see doc. 71* ¶ 7 ("If Defendants are taking the view that Plaintiff needs

Defendant Ibarra's testimony to support his factual claims, it would be in the best

interest of justice to permit Plaintiff to take the deposition of Defendant Ibarra to clarify

the issues Defendants claim Plaintiff has failed to provide evidence in support of their

claim.").  Accordingly, Plaintiff's Motion to Defer must be denied.

## V.   DEFENDANTS' MOTION FOR QUALIFIED IMMUNITY AND SUMMARY JUDGMENT

As detailed above, the Court finds that Plaintiff has failed to establish that

additional discovery is essential under Rule 56(d).  Accordingly, the Court proceeds to

consideration of Defendants' Motion for Qualified Immunity and Summary Judgment

(hereinafter, the "Motion").  Defendants seek dismissal of all of Plaintiff's § 1983 claims

against Defendant Ibarra based upon the defense of qualified immunity.  The Court

addresses each of Plaintiff's § 1983 claims in turn.

### A.  Malicious Prosecution

To defeat qualified immunity at the first step, Plaintiff must establish the

following five elements of a Fourth Amendment malicious prosecution claim: "(1) the

defendant caused the plaintiff's continued confinement or prosecution; (2) the original

action terminated in favor of plaintiff; (3) no probable cause supported the original

arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and

(5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir.

2008) (abrogated in part by *Thompson v. Clark*, 596 U.S. 36 (2022)).  Lack of probable

cause is the "gravamen" of the Fourth Amendment claim for malicious prosecution and

the tort of malicious prosecution.  *See Thompson* 596 U.S. at 43.  Plaintiff's malicious

prosecution claim fails because Defendant Ibarra possessed probable cause to support

Plaintiff's original arrests.  *See Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017)

("A malicious-prosecution claim is not cognizable until all the elements are satisfied . .

.") (citations and quotations omitted).[5]

Generally, an officer must have probable cause to believe a person has

committed a crime in order to make a warrantless arrest.  *Cortez v. McCauley*, 478 F.3d

1108, 1115, (10th Cir. 2007).  "Probable cause to arrest exists only when the facts and

circumstances within the officers' knowledge, and of which they have reasonably

trustworthy information, are sufficient in themselves to warrant a man of reasonable

caution in the belief that an offense has been or is being committed."  *Id*. at 1116

(quoting *United States v. Valenzuela*, 365 F. 3d 892, 896 (10th Cir. 2004)).  When reviewing

probable cause, the court must "examine the events leading up to the arrest, and then

---

[5] The Court need not address the remaining four elements required to establish a Fourth Amendment
malicious prosecution claim.

decide whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to probable cause." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *District of Columbia v. Wesby*, 538 U.S. 48, 56-57 (2018)).  The belief must be anchored in a "substantial probability," not just a "bare suspicion." *Id.* (quoting *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017)).  But it "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2013) (citations omitted). In the qualified immunity context, the Court asks whether officers had "arguable probable cause" for the arrest, meaning that "officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012)).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *McCauley*, 478 F.3d at 1120.  *See Bailey v. Twomey*, 791 F. App'x 724, 734 (10th Cir. 2019) (Tenth Circuit suggesting that either a probable cause or an arguable probable cause standard will suffice in analyzing the third element of a Fourth Amendment malicious prosecution claim).

Here, Defendant Ibarra arrested, and caused the prosecution of, Plaintiff for the misdemeanor offenses of Concealing Identity and Resisting, Evading or Obstructing an

Officer – namely, N.M. Stat. Ann. § 30-22-3 (1978)[6] and N.M. Stat. Ann. § 30-22-1(D) (1978)[7].  The Court addresses each offense in turn.

  i.  *Defendant Ibarra possessed probable cause to arrest Plaintiff for Concealing Identity.*

The task of determining whether there is probable cause to arrest an individual for concealing identity is two-fold.  *See Bustillos v. City of Artesia*, 98 F.4th 1022, 1028 (10th Cir. 2024).  First, the Court must determine whether Defendant Ibarra "possessed reasonable suspicion Plaintiff "had committed or was committing a crime such that the demand for his ID was lawful."  *Id*.  (citing *Corona v. Aguilar*, 959 F.3d 1278, 1283 (10th Cir. 2020)).  If so, the Court then must ask "whether there was probable cause to arrest" Plaintiff for refusing Defendant Ibarra's demand for identification.  *Id*.

"For reasonable suspicion to exist, an officer must have a 'particularized and objective basis for suspecting' criminal conduct under the totality of the circumstances."  *Id*.  (quoting *United States v. Cortez*, 449 U.S. 411, 417-18).  The Court applies this

---

[6] N.M. Stat. Ann. § 30-22-3 is called "Concealing Identity" and it provides:

  Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

[7] N.M. Stat. Ann. § 30-22-1(D) is called "Resisting, evading or obstructing an officer" and it provides:

  Resisting, evading or obstructing of an officer consists of . . . (D) resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

objective standard based on "the perspective of the reasonable officer." *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007) (quotations omitted).  Nonetheless, the "officer must point to specific, articulable facts" to support reasonable suspicion. *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010).  Reasonable suspicion is not an onerous standard, *id*. at 1153, but squarely demands "something more than an inchoate and unparticularized suspicion or hunch," *United States v. Hauk*, 412 F.3d 1179, 1186 (10th Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  The inquiry depends on "the totality of the circumstances." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Cortez*, 449 U.S. at 417).  The emphasis is on the "whole picture," *Cortez*, 449 U.S. at 417, and rejects a "divide-and-conquer analysis" of a situation's relevant factors, *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Here, the predicate, underlying crimes, according to Defendant Ibarra, derive from two sections of the Las Cruces Municipal Code – Las Cruces, N.M., Mun. Code § 19-121 (2023) ("§ 19-121") and Las Cruces, N.M., Mun. Code § 19-124 (2023) ("§ 19-124").  § 19-121 states:

> (1) It shall be unlawful for any person to make, continue, or cause to be made any loud or unusual noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others.
> (2) It shall be prima facie evidence of a violation of this division if any loud or unusual noise is audible by any person or police officer at a distance of 30 or more feet from the source or causes a person or police officer to be aware of the vibration accompanying the sound at a distance of 30 or more feet from the source.

§ 19-124 states:

> The use or operation of any radio, phonograph, or other sound-producing machine in such a manner as to disturb the peace and quiet of neighbors shall be deemed a violation of this division.

According to Las Cruces, N.M., Mun. Code § 19-133[8], a violation of either § 19-121 or § 19-124 is a petty misdemeanor.

Defendant Ibarra argues that he possessed reasonable suspicion that Plaintiff violated § 19-121 and § 19-124 because his own ears and observations confirmed loudness of music emanating from the property at a distance of 30 feet – the minimum distance to establish reasonable suspicion and a prima facie violation of §19-121(1). *Doc. 46* at 12. Plaintiff responds by contending that Defendant Ibarra "had no evidence to show [Plaintiff] had committed [a predicate, underlying] crime" because "Defendant Ibarra made no effort in this case to conduct any investigation" prior to arresting Plaintiff. *Doc. 56* at 21. "[R]ather, he assumed that Plaintiff was the homeowner . . ." *Id.*

---

[8] Las Cruces, N.M., Mun. Code § 19-133 is called "Penalties" and it provides:

> (1) A violation of any of the provisions of this division shall be a petty misdemeanor. When an offender commits a violation of this division, the offender shall be sentenced to a fine of not less than $100.00 nor more than $500.00. In addition, the offender may be sentenced up to 90 days in jail. The minimum fine of $100.00 may not be suspended, deferred or taken under advisement. The Court may, in its discretion, suspend the remainder of the fine as well as any jail time.
> (2) Where the complaint alleges a violation of this division, any plea of guilty or nolo contendere thereafter entered in satisfaction of the charges shall include at least a plea of guilty or nolo contendere to a violation of this division and no other disposition by plea of guilty or nolo contendere to any other charge shall be authorized.

The Court begins by noting the exceedingly broad nature of § 19-121 and § 19-124—specifically in the context of violative noise emanating generally from a property via a speaker.  § 19-121 gives no context on who is to be held responsible for a violation when multiple people at a property are listening to violative noise via a speaker.  The plain language of § 19-121 leaves this inquiry open for debate.  Reading the ordinance as is, anyone who is listening to music over the speaker, allowing the violative noise to continue to emanate, is in violation.  § 19-124 is especially broad in this context, as anyone "us[ing]" the speaker in such a manner as to "disturb the peace and quiet of neighbors" is in violation of the ordinance.

The broad and vague nature of both § 19-121 and § 19-124 gives the Court pause.  Nevertheless, Plaintiff does not contest the constitutionality of these ordinances.  In addition, the homeowner of the property is irrelevant to a finding of a violation of either § 19-121 or § 19-124 because the Court does not understand either ordinance to require that the individual held responsible for a noise violation be a homeowner or renter of a property emanating violative noise, or the individual directly in charge of a sound-producing machine emanating violative noise from a property.  Consequently, whether Plaintiff was the homeowner or renter of the Property, or was in control of the music emanating from the Property, is immaterial to the Court's analysis.[9]

---

[9]     Alternatively, if § 19-121 or § 19-124 required that a homeowner or renter of a property emanating violative noise be the individual held responsible for a violation, it was reasonable for Defendant Ibarra to believe Plaintiff was the homeowner or renter of the Property.  Parties dispute

Even when looking at the facts in the light most favorable to Plaintiff, the Court

determines that a reasonable officer in Defendant Ibarra's position would have

possessed reasonable suspicion that Plaintiff had committed or was committing a

violation of either § 19-121 or § 19-124.  It is undisputed that Defendant Ibarra arrived at

the Property to investigate a noise complaint.  UMF 1.  Video evidence of the scene

confirms that music was emanating from the backyard of the Property following

Defendant Ibarra's entrance to investigate, UMFs 2-3, and the Court determines that the

---

whether Defendant Ibarra had been to the Property several days before the subject incident.  Defendant Ibarra states that he had been to the Property several days before the February 6, 2021, incident and was never able to identify the homeowner.  DUMF 7.  Plaintiff claims that Defendant Ibarra had never been to the Property before February 6, 2021, and assumed that Plaintiff was the homeowner at the time of the subject incident.  Plaintiff's Response to Defendant's Statement of Material Facts 7; *doc. 56* at 21.  The Las Cruces Police Department records indicate that Defendant Ibarra had not been to the Property the week before the subject incident.  *Doc. 56-1*; *doc. 56-7*.

Nevertheless, both parties agree that Defendant Ibarra assumed Plaintiff was the homeowner of the Property.  DUMF 6; *doc. 56* at 21.  In the qualified immunity context, an officer is immune for a reasonable mistake of fact.  *Pearson*, 555 U.S. at 231.  Here, it was reasonable for Defendant Ibarra to mistake Plaintiff as the homeowner of the Property because Plaintiff was the only person to address him and consistently asked him to leave.  UMF 4.

Similarly, if § 19-121 or § 19-124 require that the individual held responsible for a violation of the ordinances be the person in charge of a sound-producing machine emanating violative noise from a property, it was reasonable for Defendant Ibarra to believe Plaintiff was in charge of the music.  The parties dispute whether Plaintiff turned off the music when Defendant Ibarra arrived.  Defendant Ibarra contends that while both men spoke, "Plaintiff grabbed a phone to shut off the music . . ."  DUMF 5.  Plaintiff contends that his phone was not connected to the speaker and that he went to get his phone to call a "[Las Cruces Police Department] supervisor friend to lodge complaint about Defendant [Ibarra's] actions."  Plaintiff's Response to Defendants' Statement of Material Facts 5.  Video evidence of the scene indicates that the music turned off as soon as Plaintiff picked up his phone and started using it.  Video at 0:10-13.  Accordingly, it was reasonable for Defendant Ibarra to believe that Plaintiff was in charge of the music.  *See Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) ("While a court considering a summary judgment motion based upon qualified immunity usually must adopt . . . the plaintiff's version of the facts, that is not true to the extent that there is clear contrary video evidence of the incident at issue.) (citations and internal quotations omitted).

music was audible from at least 30 feet away.[10]  Indeed, Plaintiff seemingly concedes that there was a violation of both § 19-121 and § 19-124 when Defendant Ibarra arrived at the property by stating that "once the music was off there was no *further violation* to justify [Defendant Ibarra's] presence.  *Doc. 56* at 20 (emphasis added).  Further, Plaintiff does not deny that he was using the sound-producing machine at the time Defendant Ibarra arrived at the property.  These facts are enough to give a reasonable officer in Defendant Ibarra's position more than an inchoate and unparticularized suspicion or hunch for suspecting a violation of either § 19-121 or § 19-124.  Thus, Defendant Ibarra possessed reasonable suspicion that Plaintiff "had committed or was committing a crime such that the demand for his ID was lawful."  *Bustillos*, 98 F.4th at 1028.

The Court turns to whether there was probable cause to arrest Plaintiff for refusing Defendant Ibarra's requests for identification.  New Mexico courts have construed N.M. Stat. Ann. § 30-22-3 (1978) (Concealing Identity) to "require[ ] a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 983 P.2d 421, 424 (N.M. Ct. App. 1999) (quoting *In re Suazo*, 877 P.2d 1088, 1096 (N.M. 1994)).  One

---

[10] Plaintiff fails to deny that the music emanating from the Property at the time Defendant Ibarra arrived could be heard from thirty (30) feet away or was disturbing the peace and quiet of surrounding neighbors; Plaintiff only denies that Defendant Ibarra could hear music emanating from the backyard as he exited his police unit from *fifty (50) feet away*.  *See* UMF 2; Plaintiff's Response to Defendants' Statement of Material Facts 2.

conceals his identity by "refraining from stating any identity at all," and "concealment for any period of time, however short, violates the statute." *Id*. at 423.

Plaintiff avers that probable cause to arrest him for refusing Defendant Ibarra's demand for identification did not exist because Defendant Ibarra unlawfully entered the curtilage of property where Plaintiff was a guest, "render[ing] his authority to make demands void." *Doc. 56* at 19-21.  It is undisputed that at one point during his investigation, Defendant Ibarra entered the fenced-in backyard of the Property and requested Plaintiff's identification.  UMFs 3, 5.  However, it is also undisputed that following Defendant Ibarra's entrance into the backyard, both men exited the backyard and continued their conversation in the open side-yard of the Property.  UMF 6.  Defendant Ibarra demanded Plaintiff's identification while in the open side-yard of the Property.  UMF 7.  When standing in the publicly accessible side yard of the Property, Defendant Ibarra and Plaintiff were in a "public place" where Plaintiff had no expectation of privacy because he was visible to the public and "exposed to public view, speech, hearing, and touch." *United States v. Santana*, 427 U.S. 38, 42 (1976).  Further, whether Plaintiff obtained reasonable suspicion of the predicate, underlying crime while in the backyard is immaterial to the Court's analysis because the exclusionary rule and fruit-of-the-poisonous-tree doctrine does not apply in the § 1983 context.  *See Shaw v. Schulte*, 36 F.4th 1006, 1017 ("The lack of probable cause to search does not vitiate the probable cause to arrest on the basis of evidence found in that search.")

21

(internal citations and quotations omitted).  Thus, Defendant Ibarra's demand for Plaintiff's identification in the open side-yard of the property was lawful once he had reasonable suspicion that Plaintiff had committed or was committing a violation of § 19-121 or § 19-124.[11]

Undeniably, Plaintiff refused to furnish his identification at that time or soon thereafter despite Defendant Ibarra's lawful request.  As a result, Defendant Ibarra possessed probable cause to arrest him for Concealing Identity.  *Dawson*, 938 P.2d at 424.  Accordingly, Plaintiff's malicious prosecution claim as to his charge of Concealing Identity fails.

> ii.  *Defendant Ibarra possessed probable cause to arrest Plaintiff for Resisting, Evading, or Obstructing an Officer.*

The crime of resisting, evading, or obstructing an officer consists of "resisting or abusing any . . . peace officer in the lawful discharge of his duties."  N.M. Stat. Ann. § 30-22-1(D) (1978).  "The New Mexico Court of Appeals has interpreted the phrase 'resisting or abusing' in section 30-22-1(D) to forbid three types of conduct: (1) physical acts of resistance; (2) the use of fighting words; and (3) the refusal to obey lawful police commands."  *Corona*, 959 F.3d at 1283 (citations and quotations omitted).  Nevertheless, both the Tenth Circuit and New Mexico Courts have emphasized that resisting, evading, or obstructing an officer "primarily consists of physical acts of resistance."

---

[11] Consequently, the Court need not address the lawfulness of Defendant Ibarra's demands for Plaintiff's identification inside of the fenced-in backyard.

*State v. Wade*, 667 P.2d 459, 460 (N.M. Ct. App. 1983); *see also Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).

Defendant Ibarra possessed probable cause to charge Plaintiff for Resisting, Evading, or Obstructing an Officer because Plaintiff used physical acts of resistance to resist his arrest for Concealing Identity.[12]  Each time Defendant Ibarra grabbed Plaintiff's arm to attempt to get it behind his back for arrest, Plaintiff physically and consistently pulled his arm away.  UMFs 9, 11.  At one point while Defendant Ibarra had a hold on Plaintiff's right arm, he tried to push Plaintiff into a bush to get him on the ground, but Plaintiff still resisted and both men fell.  UMF 11.  Thus, Plaintiff's continuous, consistent, and physical acts of resistance warranted Defendant Ibarra's belief that Plaintiff was violating N.M. Stat. Ann. § 30-22-1(D).

Based on the foregoing reasoning, Defendant Ibarra is entitled to qualified immunity and summary judgment on Plaintiff's Fourth Amendment malicious prosecution claim.  Plaintiff cannot establish element three required to satisfy this claim – that Defendant Ibarra possessed no probable cause to support Plaintiff's original arrests for either crime of Concealing Identity or Resisting, Evading or Obstructing an Officer.  Consequently, Plaintiff's malicious prosecution claim is dismissed.

---

[12] Plaintiff insists that "since Defendant did not have a lawful basis to request [Plaintiff's] identification, he did not have probable cause to arrest [Plaintiff] for resisting [Defendant Ibarra's] demand for identification.  *Doc. 56* at 20.  The Court has already determined that Defendant Ibarra had a lawful basis to request Plaintiff's identification in Section IV, B, I, a of this Order.  As a result, Plaintiff's argument is inadequate.

### B.  Excessive Force

To defeat qualified immunity at the first step, Plaintiff must establish that the force applied to him was "excessive" under the Fourth Amendment such that it was unconstitutional.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Id*. at 395-97.  The reasonableness of the officer's belief as to the appropriate level of force should be "judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396; *see also Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015) ("The belief not need be correct – in retrospect the force may seem unnecessary – as long as it is reasonable.").  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97. Among the factors that courts should consider in determining whether a police officer applied excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id*. at 396.

In applying the *Graham* factors, the Court is conscious that in an evolving situation, different degrees of force may be appropriate at different points during an encounter between an officer and an individual.  Here, the Court divides the encounter

between Defendant Ibarra and Plaintiff into two phases: (1) Defendant Ibarra's initial

attempt to arrest Plaintiff, which was not successful, and (2) Defendant's subsequent

use of his taser to subdue Plaintiff once he began resisting arrest.  The Court therefore

applies the *Graham* factors twice – first to determine whether Defendant Ibarra used

reasonable force when he grabbed Plaintiff's arm to attempt to put it behind his back,

and second to determine whether Defendant Ibarra's decision to tase plaintiff three[13]

times during the ensuing course of the arrest was reasonable in light of Plaintiff's

subsequent resistance.  The Court evaluates whether Defendant Ibarra's "reckless or

deliberate conduct during the seizure unreasonably created the need to use such force"

following its application of the *Graham* factors.  *See Tenorio*, 802 F.3d at 1164 (citation

omitted).

　　　　Applying the *Graham* factors to Defendant Ibarra's initial attempt to arrest

Plaintiff, the Court concludes that he used reasonable force under the circumstances.

　　　　　　i.　*The Graham factors weigh in favor of Defendant Ibarra's use of force in*
　　　　　　　　*grabbing Plaintiff's arm to attempt to put it behind his back.*

　　　　　　　　a.　Severity of the Crime

　　　　Under the first *Graham* factor, "a minor offense supports only the use of minimal

force." *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1273 (10th Cir. 2022).  "A misdemeanor

committed in a 'particularly harmless manner . . . reduces the level of force that is

---

[13] The Court will not consider Defendant Ibarra's first taser shot due to its ineffectiveness.  UMF 12.

reasonable for the officer to use.'" *Id.* (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007)). N.M. Stat. Ann. § 30-22-3 (Concealing Identity) is punishable as a petty misdemeanor. Nevertheless, the Court concludes that this factor favors Defendant Ibarra because Plaintiff's minor offense supported Defendant Ibarra's use of minimal force in grabbing Plaintiff's arm to initiate his arrest. *See McCauley*, 478 F.3d at 1128 ("We have little difficulty concluding that a small amount of force, like grabbing [the plaintiff] and placing him in the patrol car, is permissible in effectuating an arrest under the Fourth Amendment.").

### b. Threat to the Officers or Others

The second *Graham* factor – the immediate threat to the safety of the officers or others – is the "most important," and requires the Court to look at "whether the officers or others were in danger at the precise moment that they used force." *Wilkins,* 33 F.4th at 1273 (quoting *Pauly v. White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017) and *Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020)).

When Defendant Ibarra first grabbed Plaintiff's arm, he had only verbally objected to Defendant Ibarra's request that he furnish his identity and turn around. UMFs 5-8. At that moment, a reasonable officer would have had no reason to believe that Plaintiff posed a threat. Thus, this factor favors Plaintiff.

26

c. Active Resistance

As for the third *Graham* factor, the Court considers whether there was "any resistance during the suspect's encounter with the officers," or whether the suspect attempted to flee. *Wilkins*, 33 F.4th at 1273. When Defendant Ibarra first grabbed Plaintiff's arm, he was not yet physically resisting or fleeing. UMFs 7-8. But resistance need not be physical. The Tenth Circuit has found this factor to weigh in favor of "some degree of physical coercion or threat," *Graham*, 490 U.S. at 396, when an individual refuses to obey an officer's lawful orders, *see Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007) (officers' use of pepper spray was not unreasonable when plaintiff refused to obey repeated officer instructions to exit her car during a fifty-minute standoff). "Officers must be able to employ force to enforce their lawful orders. Otherwise, an officer's power to give lawful orders 'would be hollow.'" *Andersen v. DelCore*, 79 F.4th 1153, 1166 (10th Cir. 2023) (quoting *Helvie v. Jenkins*, 66 F.4th 1127, 1238 (10th Cir. 2023)). Here, Plaintiff had been completely uncooperative and repeatedly refused Defendant Ibarra's orders.

Defendant Ibarra had a lawful basis to request Plaintiff's identification, and once Plaintiff refused to comply, Defendant Ibarra had a lawful basis to request that Plaintiff turn around so that he could effectuate Plaintiff's arrest. When Plaintiff refused to turn around, Defendant Ibarra was entitled to use an appropriately tailored amount of force to enforce compliance with his lawful orders. Under these circumstances, the Court

27

concludes that this factor supports Defendant Ibarra's decision to initiate what at first was a relatively minor degree of force in order to take Plaintiff into custody.

Defendant Ibarra used objectively reasonable force when he initiated arrest procedures by grabbing Plaintiff's arm to attempt to put it behind his back. Considering the totality of the circumstances, Defendant Ibarra used a minor degree of force that was appropriately tailored to the circumstances. Therefore, no constitutional violation occurred at that point of the arrest.

> ii. *The Graham factors weigh in favor of Defendant Ibarra's use of force in tasing Plaintiff in light of Plaintiff's subsequent resistance.*

The Court turns to Defendant Ibarra's decision to tase Plaintiff three times. The Court concludes that this use of force was also reasonable, but for somewhat different reasons. As before, the Court applies the *Graham* factors to the "facts and circumstances as they existed at the moment the forced was used"; here, the three uses of the taser. *Emmett*, 973 F.3d at 1135. A new *Graham* analysis is appropriate, however, because the facts and circumstances changed once Plaintiff began resisting arrest in the moments after Defendant Ibarra made the first attempted arrest.

Before Defendant Ibarra tased Plaintiff, Plaintiff was physically struggling against Defendant Ibarra and appeared to be overpowering him. UMFs 9-11. At one point during the physical struggle, Officer Ibarra and Mr. Marta lost balance and fell. UMF 11. Officer Ibarra states that he mistakenly believed that Mr. Marta punched him

in the face when both of them fell.[14]  *Doc. 46-1* at 3.  It was not until both men regained

balance that Defendant Ibarra tased Plaintiff for the first time.  UMF 12.  Defendant

Ibarra's first taser shot was ineffective because only one of the taser barbs penetrated

Plaintiff's skin.  *Id*.  Plaintiff continued to walk toward Officer Ibarra after the first

ineffective taser shot.  *Id*.  Defendant Ibarra administered a second taser shot and

Plaintiff fell to the ground.  *Id*.  Once Plaintiff fell to the ground, multiple individuals

were standing close by, continuing to yell.  *Id*.  Officer Ibarra administered two taser arc

cycles after Mr. Marta fell to the ground, one nine seconds after the second taser shot

and the other four seconds after the first taser cycle.  *Id*.; *see doc 56-4* at 19.  Soon

thereafter, additional officers arrived on the scene as Officer Ibarra handcuffed Mr.

Marta.  UMF 13.

### a.  Severity of the Crime

This factor now weighs in Plaintiff's favor.  N.M. Stat. Ann. § 30-22-3 (Concealing

Identity) is punishable as a petty misdemeanor, and N.M. Stat. Ann. § 30-22-1(D)

(Resisting, Evading, or Obstructing an Officer) is punishable as a misdemeanor.

---

[14] Video evidence of Mr. Marta and Officer Ibarra's fall demonstrates that Mr. Marta's left hand, which was holding his cellphone, descends behind Officer Ibarra's head as they fall.  Video at 1:45-47.  In his Affidavit, Defendant Ibarra states, "As Mr. Marta fell, I felt his hand hit me on the cheek which I incorrectly perceived as an intentional punch to the face . . . After a closer look at my [body worn camera], I realized that Mr. Marta's hand may have unintentionally hit me in the face with the hand that was holding the phone."  *Doc. 46-1* at 3.  Based on the video evidence of Mr. Marta and Officer Ibarra's fall, the Court finds that Officer Ibarra's mistake of fact was reasonable.  *Pearson*, 555 U.S. at 231.

Neither of these crimes are "severe."  Thus, this factor weighs against the use of

"anything more than minimal force."  *Wilkins*, 33 F.4th at 1274.

> b.   Threat to the Officers or Others

This factor now weighs in Defendant Ibarra's favor.  "Under the second [*Graham*]

factor, an officer may use increased force when a suspect is armed, repeatedly ignores

police commands, or makes hostile motions toward the officer or others."  *Donahue v.*

*Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020).[15]  Plaintiff's actions prior to Defendant

Ibarra's use of force could reasonably be interpreted as hostile.  *See Coronado v. Olsen*,

No. 20-4118, 2022 WL 152124, at *4 (10th Cir. Jan. 18, 2022) (unpublished)[16] (taking

suspect's hostile actions prior to officer's use of force into consideration in determining

that second *Graham* favor favored officer).

First, Plaintiff repeatedly ignored Defendant Ibarra's lawful commands.  UMFs

7-11.  Second, Plaintiff consistently pulled his arm away from Defendant Ibarra's grip,

continuously resisting Defendant Ibarra's attempts at arrest.  UMFs 9-10.  Third,

Plaintiff overpowered Defendant Ibarra.  *See Doc. 56* at 26 ("The reason Defendant

Ibarra could not arrest Mr. Marta was because Mr. Marta was significantly larger than

Defendant Ibarra and the way Defendant Ibarra was making the arrest [was] not

---

[15] The Court notes that Plaintiff incorrectly applies the factors set forth in *Estate of Larsen v. Murr,* 511 F.3d 1255, 1260 (10th Cir. 2008), to the facts of this case, doc. 56 at 25-26.  The *Larsen* factors are applied in cases involving an armed suspect.  *See Rosales v. Bradshaw*, 72 F.4th 1145, 1152 ("We assess the threat posed by an armed suspect using another set of nonexclusive factors, including [the *Larsen* factors]."  The *Larsen* factors do not apply here, as Plaintiff was not an armed suspect.

[16] Though unpublished, the Court's reasoning in *Coronado* is persuasive.  *See* 10th Cir. R. 32.1(A).

effective due to the substantial size difference."); *see also Andersen*, 79 F.4th at 1168 (finding second *Graham* factor weighed in favor of officer in part because suspect overpowered officer).  Fourth, multiple guests on the Property surrounded the two men and yelled at Defendant Ibarra.  UMFs 11-12; *see Rodeman v. Foster*, 767 F. Supp. 2d 1176, 1185 (D. Colo. 2011) (finding second *Graham* favor weighed in favor of officer in part because guests were yelling and screaming at him).  Fifth, after Defendant Ibarra's first ineffective taser shot, Plaintiff continued to walk toward him.  UMF 12.  Under these circumstances, the second *Graham* factor supports Defendant's decision to use his taser to subdue Plaintiff.  *See Andersen*, 79 F.4th at 1168 (finding second *Graham* factor weighed in favor of officers' use of taser when suspect posed an immediate threat); *Coronado*, 2022 WL 152124, at *4 (same).

c.   Active Resistance

This factor strongly supports Defendant Ibarra's decision to use his taser. Encounters between law enforcement and civilians can be "tense, uncertain, and rapidly evolving."  *Graham*, 490 U.S. at 397.  "When an officer lawfully uses force but an individual resists that initial use of force, we think it is obvious that the officer may use a greater degree of force than would have initially been appropriate to subdue the individual, obtain peace, and ensure that the officers had control over the situation." *Andersen*, 79 F.4th at 1168 (citations omitted).

Plaintiff began physically resisting arrest in the moments after Defendant Ibarra grabbed him to take him into custody and did not stop until Defendant Ibarra was able to subdue him by using his taser.  UMFs 9-12.  While the two additional arc-cycles may have been unnecessary once Plaintiff was on the ground, the Court finds that they were reasonable.  *Tenorio*, 802 F.3d at 1164.  The arc cycles came only seconds after Plaintiff had continued toward Defendant Ibarra after his first failed taser attempt, while a group of people surrounded the two men and yelled at Defendant Ibarra, and after a tense, physical altercation in which Plaintiff resisted arrest.  UMFs 9-12.  Therefore, Defendant Ibarra was entitled to respond to Plaintiff's forceful resistance with reasonable measures to subdue him and reassert control over the situation.

   iii. *None of Defendant Ibarra's actions created and exacerbated his need to use force against Plaintiff.*

In addition to the *Graham* factors, the Court must also consider whether an officer's "reckless or deliberate conduct during the seizure unreasonably created the need to use such force."  *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995); *Estate of Valverde v. Dodge*, 967 F.3d 1049, 1067 (10th Cir. 2020).  This rule "is simply a specific application of the 'totality of the circumstances' approach inherent in the Fourth Amendment's reasonableness standard."  *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  Only events "immediately connected" with the actual seizure may be considered, and "[m]ere negligent actions precipitating a

32

confrontation would not, of course, be actionable under § 1983." *Sevier*, 60 F.3d at 699 &

nn.7-8 (10th Cir. 1995).  In analyzing conduct immediately associated with a seizure,

Tenth Circuit cases suggest that "recklessness is manifested mostly by 'police onslaught

at the victim.'"  *Arnold v. City of Olathe,* 35 F.4th 778, 789 (10th Cir. 2022) (quoting

*Valverde*, 967 F.3d at 1067).

Plaintiff contends that Defendant Ibarra's own actions "created and exacerbated

the incident resulting in him tasing" him.  *Doc. 56* at 26-27.  In support of this argument,

Plaintiff states six acts by Defendant Ibarra but fails to state how any constituted

recklessness manifested by "police onslaught[17] at the victim." *Arnold*, 35 F.4th at 789; *cf.*

*Allen*, 119 F.3d at 840-41 (officers ran up to victim's car – with one officer apparently

screaming while running up and shouting at him to get out of his car – and tried to

wrench a gun from victim's hands and open his passenger door); *cf. Estate of Ceballos v.*

*Husk*, 919 F.3d 1204, 1209-11, 1215-16 (10th Cir. 2019) (officers quickly approached

victim, screamed at him to drop a bat he was holding, and refused to give ground as the

victim walked toward them); *cf. Rosales v. Bradshaw*, 72 F.4th 1145, 1154 (10th Cir. 2023)

(officer followed victim in an unknown and unmarked vehicle for no-law enforcement

reason, declined back up assistance, followed victim all the way home, blocked victim

in his driveway, and yelled at victim without ever identifying himself as law

---

[17] *See Onslaught*, Merriam-Webster Dictionary Online, https://www.merriam-
webster.com/dictionary/onslaught (last visited May 8, 2024) (defining "onslaught" as "an especially fierce
attack" or "something resembling such an attack").

enforcement).  Plaintiff fails to show, and the Court does not find, that any of Defendant Ibarra's actions, discussed throughout this Order, constituted reckless or deliberate behavior which unreasonably created the need for the force used.

Defendant Ibarra had reason to believe Plaintiff was, at most, a misdemeanant. But Plaintiff posed a threat to Defendant Ibarra, and he physically resisted arrest. Further, none of Defendant Ibarra's actions created and exacerbated his need to tase Plaintiff.  The force used here, while unfortunate, was not excessive.  Accordingly, Defendant Ibarra is entitled to qualified immunity and summary judgment on Plaintiff's excessive force claim, and Plaintiff's excessive force claim is dismissed.

### C.  Unreasonable Seizure

Defendant Ibarra is entitled to summary judgment on the basis of qualified immunity on Plaintiff's Fourth Amendment unreasonable seizure claim because Plaintiff fails to meet his burden under the clearly established prong of the qualified immunity test.  Specifically, the Court finds that at the time of Plaintiff's arrest, there was no clearly established law that would have put Defendant Ibarra on notice that his arrest of Plaintiff, which was supported by probable cause, while Plaintiff was standing in the backyard and visible through the frame of the fence door that was open and in his hand, was unconstitutional in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures.  Because failure to meet one prong of the two-prong test for qualified immunity is dispositive at the summary judgment stage, the Court

declines to address the other prong which concerns whether Defendant Ibarra violated Plaintiff's Forth Amendment constitutional right to unreasonable seizures.

The Fourth Amendment prohibits unreasonable seizures by law enforcement officers.  U.S. Const. amend. IV.  Nevertheless, "not all personal intercourse between policemen and citizens involves 'seizures' of persons."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Id*.  When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure only occurs if (a) the officer shows his authority; and (b) the citizen "submi[ts] to the assertion of authority."  *See California v. Hodari D.*, 499 U.S. 621, 625-26 (1991).

Generally, an officer must have probable cause to believe a person committed a crime in order to make a warrantless arrest.  *McCauley*, 478 F.3d at 1115.  A warrantless seizure within the home is presumptively unreasonable, *Kentucky v. King*, 563 U.S. 452, 459 (2011), subject to certain exceptions such as consent or where there exists exigent circumstances and probable cause, *United States v. Flowers*, 336 F.3d 1222, 1227 (10th Cir. 2003).  And Fourth Amendment protections apply to curtilage, defined as "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life," as curtilage is "considered part of the home itself for Fourth

Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984) (internal

quotation marks omitted).

> i.  *The clearly established inquiry and material facts.*

Qualified immunity protects officials as long as their actions do not "violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *White*, 580 U.S. at 78-79 (citations and internal quotation marks

omitted).  During the clearly established inquiry, the Court's task is to assess the

material facts of the instant case and then compare those facts with the facts of other

relevant cases in order to determine "if courts have previously ruled that *materially*

*similar conduct* was unconstitutional, or if a general constitutional rule already identified

in the decisional law applies with *obvious clarity* to the specific conduct at issue." *Estate*

*of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016) (citation omitted). "[T]he clearly

established law must be 'particularized' to the facts of the case," *Perry v. Durborow*, 892

F.3d 1116, 1124 (10th Cir. 2018) (citations omitted), and it must relate to the instant facts

with "a high degree of specificity," *Wesby*, 583 U.S. at 63 (internal quotation marks

omitted).  Indeed, the Supreme Court has repeatedly admonished courts "not to define

clearly established law at a high level of generality," *Emmons*, 586 U.S. at 42 (quoting

*Kisela*, 584 U.S. at 103).  Plaintiff bears the burden of identifying the clearly established

law and may do so by "pointing to either a Supreme Court or Tenth Circuit decision, or

the weight of authority from other courts, existing at the time of the alleged violation."

*T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (citation omitted).[18]

For purposes of comparing the facts of the instant case with the facts of other relevant cases in order to determine if there was clearly established law that would have put Defendant on notice that his actions were unconstitutional, the Court finds the following facts to be material: (1) Defendant Ibarra never entered the home located on the Property, (2) at the initiation of Plaintiff's arrest, Defendant Ibarra possessed probable cause to believe that Plaintiff had violated N.M. Stat. Ann. § 30-22-3 (Concealing Identity), and (3) at the initiation of Plaintiff's arrest, he was standing slightly inside of the fenced-in backyard at the fence door with the door open and in his left hand.

### ii. *Plaintiff fails under the clearly established prong.*

Plaintiff offers three relevant arguments concerning clearly established law. The first two are easily dismissed. First, Plaintiff contends that it is clearly established that "officers are required to investigate information available to them prior to arresting someone without a warrant." *See doc. 56* at 17 (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1258 (10th Cir. 1998)). *Baptiste* stands for the proposition that police officers "may not ignore easily accessible evidence and thereby delegate their duty to investigate and

---

[18] "[T]here can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 583 U.S. at 64 (citation omitted). Plaintiff does not argue that this is such a case, and the Court does not find that it is.

make an independent probable cause determination based on that investigation."

*Baptiste*, 147 F.3d at 1259.  The Court has already determined that Defendant Ibarra had

sufficient probable cause to arrest Mr. Marta for both Concealing Identity and Resisting,

Evading, or Obstructing an Officer.  Thus, *Baptiste* is inapplicable.  Second, Plaintiff

contends that Defendant Ibarra violated his clearly established constitutional rights

because he arrested Plaintiff for Concealing Identity without "evidence to show that

[Plaintiff] had committed [an underlying, predicate] crime.  *Doc. 56* at 21-22.  The Court

has already determined that Defendant Ibarra possessed probable cause to arrest

Plaintiff for Concealing Identity, based in part on his reasonable suspicion for believing

Plaintiff had been or was committing a predicate, underlying crime.  Thus, this

argument is immaterial.

Plaintiff's third argument is that Defendant Ibarra violated Plaintiff's clearly

established federal constitutional rights by entering the curtilage of property where

Plaintiff was a guest without a warrant or exigent circumstances and probable cause,

but this argument also fails.  *Doc. 56* at 19-21.  As an initial matter, the Court notes that

Plaintiff does not bring a Fourth Amendment unreasonable search claim.  Thus, the

Court will not address whether Defendant Ibarra's initial entrance into the backyard of

the Property without a warrant or exigent circumstances and probable cause violated

Plaintiff's Fourth Amendment right to unreasonable *searches*.  Nonetheless, in support

of his proposition that Defendant Ibarra's entry into the backyard had the effect of

making his arrest unlawful because his authority to make demands was void, Plaintiff relies on three *search* cases – *Florida v. Jardines*, 569 U.S. 1 (2013), *Collins v. Virginia*, 584 U.S. 586 (2018), and *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010). These cases stand for the proposition that it is clearly established that a warrantless *search* of curtilage is unconstitutional. *Soza v. Demsich*, 13 F.4th 1094, 1105 (10th Cir. 2021). However, there is a distinction between warrantless *searches* inside of a curtilage and warrantless *seizures* inside of a curtilage. *Id*. Thus, *Jardines*, *Collins*, and *Lundstrom* are inapplicable to the facts of the instant case because this is not a search case – this is a seizure case.

Although Plaintiff's briefing states the legal standard for a warrantless seizure inside of a home, *see doc. 56* at 16, he does not argue that Defendant Ibarra unlawfully seized him inside of the curtilage of the Property.[19] Nevertheless, the Court finds it necessary to address the location of Plaintiff's arrest because when Defendant Ibarra first attempted to initiate the arrest, Plaintiff was standing slightly inside of a fenced-in backyard, with the fence door open and in his left hand, while simultaneously visible through the frame of the fence door. UMF 8. With these material circumstances in

---

[19] Plaintiff only argues that Defendant Ibarra's "unlawful presence in the backyard of the [P]roperty had the legal effect to make his commands to Plaintiff outside the scope of the criminal charges which [Officer Ibarra] attempts to use as a justification to his actions. . . [S]ince Defendant [Ibarra] did not have a lawful basis to request Mr. Marta's identification, he did not have probable cause to arrest Mr. Marta for resisting [Officer Ibarra's] demand for identification." *Doc. 56* at 20. The Court has already determined that Mr. Marta had a lawful basis for requesting Mr. Marta's identification and that he did so while outside of the backyard of the Property.

mind, the Court formulates the particularized question as follows: is there clearly

established law demonstrating that it is unconstitutional for a law enforcement official

to effectuate a warrantless seizure, with probable cause but without exigent

circumstances, while a suspect is standing inside of a backyard while simultaneously at

an open gate door?[20]  Looking at the case law discovered *sua sponte*, the Court finds

there is not.

One recent Tenth Circuit case, *Soza v. Demisch*, is particularly explanatory.  13

F.4th at 1104-07.  In *Soza*, two officers entered the plaintiff's publicly accessible front

porch with guns drawn, handcuffed him, and patted him down as part of a burglary

investigation.  *Id*. at 1097.  Relevant here, the plaintiff sued the officers under § 1983,

alleging a violation of his clearly established Fourth Amendment right when they

entered his front porch without a warrant or probable cause to seize him.  *Id*. at 1097,

1104.  In affirming the district court's decision to grant the officers' motion for summary

judgment and qualified immunity, the Tenth Circuit concluded that the law regarding

any such violation was not clearly established.  *Id*. at 1104-07.  In making this

conclusion, the Court made a distinction between warrantless seizures that involve a

---

[20] Neither party contends that exigent circumstances existed at the time of Plaintiff's arrest or that the backyard is not curtilage.  The backyard of the Property is undoubtedly curtilage.  *See Collins*, 584 U.S. at 592 ("[T]he Court considers curtilage – the area immediate surrounding and associated with the home.") (internal quotations and citations omitted).

warrantless entry into a suspect's *home itself*, rather than the curtilage of the home. *Id*. at

1105. The Court stated:

> " . . . [A]ll cases in the Tenth Circuit and Supreme Court addressing *seizures*
> only involve warrantless entry into a suspect's *home itself*, rather than the
> curtilage of the home. *See, e.g., Payton v. New York*, 445 U.S. 573, 576, 100 S.
> Ct. 1371, 63 L. Ed. 2d 639 (1980); *United States v. Reeves*, 524 F.3d 1161, 1165
> (10th Cir. 2008); *Flowers*, 336 F.3d at 1225. We have found no case that
> addresses both 1) warrantless entry onto a front porch or other curtilage,
> rather than into the home, for 2) the purpose of a seizure, rather than a
> search—except, arguably, one: *United States v. Santana*, 427 U.S. 38, 96 S. Ct.
> 2406, 49 L. Ed. 2d 300 (1976).
>
> . . . In that case, police spotted a drug trafficking suspect standing in the
> doorway of her home. 427 U.S. at 40, 96 S. Ct. 2406. As the officers
> approached the suspect to arrest her, she entered the vestibule of the house,
> after which the officers followed the suspect inside and arrested
> her. *Id*. Relevant here, the Supreme Court deemed the arrest lawful
> because it was set in motion while the defendant was standing in her
> doorway, a "'public' place" where the suspect had no expectation of
> privacy. *Id*. at 42, 96 S. Ct. 2406. Although the Court recognized that "under
> the common law of property the threshold of one's dwelling is 'private,' as
> is the yard surrounding the house," it nonetheless concluded that the
> suspect was in a "public" place while standing at the threshold of her home
> because she "was not merely visible to the public but was as exposed to
> public view, speech, hearing, and touch as if she had been standing
> completely outside her house." *Id*. at 42, 96 S. Ct. 2406.

*Id*. at 1104-06.

The Court then concluded that *Santana* could be considered on point for the

officers because "it upholds a warrantless entry into the threshold of one's home – like

the front porch – for the purpose of a seizure and it has not been overruled." *Id*. at 1106.

Noting that *Santana's* "foundation has been eroded by subsequent curtilage cases like

*Jardines*," the Court nevertheless concluded that reasonable minds could differ as to the

constitutionality of a warrantless front porch seizure.  *Id*. at 1107.  Because the officers

could have "reasonably relied on *Santana* for the proposition that warrantless entry onto

a front porch for the purpose of detaining a suspect is constitutional," the officers were

entitled to qualified immunity.[21]  *Id*.

Here, Plaintiff's backyard seizure is similar to the front porch seizure in *Soza* and

suffers from the same fatal consequences at prong two of the two-prong test for

qualified immunity.  This case does not involve a warrantless entry into a suspect's

*home itself* to effectuate a warrantless seizure – Plaintiff's seizure occurred while he was

standing within the fenced-in curtilage of the home while at the open fence door.[22]

While visible at an open fence door in an outdoor backyard, Plaintiff was arguably in a

publicly accessible space open to public view.  The Court is not convinced that where

Plaintiff was standing when Defendant Ibarra initiated arrest is comparable to an

individual standing inside of a home itself.  Where Plaintiff was standing is

considerably more like the outdoor, front porch that presented the Tenth Circuit with

---

[21] The *Soza* Court noted:

> To review: it is clear that warrantless seizures cannot occur within the home (subject to exceptions).  *Payton*, 445 U.S. at 576.  And curtilage, of which a front porch is certainly part, is entitled to "the same Fourth Amendment protections attaching to the home." *Lundstrom*, 616 F.3d at 1129. Therefore, at first glance it seems to follow that the warrantless entry of the [officers] onto [plaintiff's] front porch was unconstitutional . . . But, again, this ignores Santana, which remains binding precedent.

13 F.4th at 1106.

[22] Plaintiff's seizure did not occur until Defendant Ibarra physically initiated Plaintiff's arrest because before Defendant Ibarra applied physical force, Plaintiff never submitted to Defendant Ibarra's assertion of authority.  *See Hodari D.*, 499 U.S. at 625-26.

uncertainty in *Soza*.  Consequently, it cannot be said that whether Defendant Ibarra

violated Plaintiff's Fourth Amendment right to unreasonable seizures by seizing him in

the curtilage of the Property, while he was simultaneously at an open fence door, is

"beyond debate."  *White*, 580 U.S. at 79.  Accordingly, Defendant Ibarra is entitled to

qualified immunity and summary judgment on Plaintiff's unreasonable seizure claim,

and Plaintiff's unreasonable seizure claim is dismissed.

## VI.   RESOLUTION OF REMAINING CLAIMS

The rulings above dispose of Counts VI, VII, and VIII in Plaintiff's First

Amended Civil Complaint for Damages.  *See doc. 7*.  As Counts I-V are based on state

law, and Defendants do not invoke the Court's diversity jurisdiction, *see doc. 1*, the

Court's continued exercise of jurisdiction over this case would rest on its

supplemental jurisdiction.  *See* 28 U.S.C. § 1367.  Upon dismissal of Plaintiff's federal

claims, the Court must decide whether or not it will adjudicate any remaining state

law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise

supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all

claims over which it has original jurisdiction[.]").  When all federal claims have been

dismissed from a case, supplemental state claims are ordinarily dismissed without

prejudice.  *See Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1237 (10th

Cir. 1997).  Given the potential distinctions in how these facts might be resolved

under state law, the Court will decline to exercise jurisdiction over Plaintiff's

remaining state law claims and will remand them back to state court.

**VII.   CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Defer

Consideration of Motion for Summary Judgment and Permit Deposition Pursuant to

Rule 56(D) and Declaration of Unavailability of Facts to Support Opposition, *doc. 71*,

and GRANTS Defendants' Motion for Summary Judgment and Qualified Immunity,

*doc. 46*, as to Plaintiff's § 1983 claims.  The Court DENIES Defendants' Motion for

Summary Judgment and Qualified Immunity, *id.*, as to Plaintiff's state law claims based

upon a declination of supplemental jurisdiction and REMANDS this case to the Third

Judicial District Court, Dona Aña County, New Mexico, for further proceedings.

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**